### W. P. WALDEN V. STATE

No. 29,087. June 19, 1957.
Appellant's Motion for Rehearing Overruled
(Without Written Opinion) October 16, 1957.

*James E. Rexford,* Wichita Falls, for appellant.

*Boyd Newman,* County Attorney, Sherman, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is felony theft; the punishment, 2½ years.

The sole question presented is the sufficiency of the evidence to support the conviction.

The witness Batson testified that on or about the date charged in the indictment a set of B type B J pipe tongs which he valued at $2500 were stolen from a drilling rig which he was operating in Grayson County and were later returned to him from Wichita Falls. He testified that when he bought the tongs as a part of a rig they were painted Bethlehem yellow, that one of the handles was broken and he had a man mend the break by welding it, that he painted the tongs as well as the remainder of the equipment National blue, and that when they were returned to him they had been painted red but that part of the red paint had come off and he saw National blue underneath and recognized the weld.

Deputy Sheriff Johnson of Wichita Falls testified that, accompanied by special officer Buckaloo, who had died by the time of the trial, and armed with a warrant for the arrest of appellant in a Taylor County case, he went to appellant's home in Wichita Falls, secured appellant's permission to search a little

room back of his carport, and there found the tongs which met the description of those lost by Batson. This search occurred approximately two months after the theft.

On cross-examination, Johnson stated that when he asked the appellant where he had gotten the tongs the appellant "just said he had a bill of sale for them." After his arrest, the appellant and his wife asked for and received time to produce the bill of sale but were unable to do so within the time allowed by the arresting officers.

Appellant, testifying in his own behalf, stated that he was in the business of selling and trading oil field equipment, used his home as his base of operations, and that on the day following that charged in the indictment he had traded for the tongs which were recovered by the officers at his home. His explanation of the trade was that he met a man while at the Garrett Equipment Company in Wichita Falls he had never seen or heard of before who had a set of B type B J tongs with a broken handle which he said he had brought from Comanche, Oklahoma, to trade for a smaller type tongs, that they made a trade in which he gave the man a smaller set and $500 in cash and received from the man a ticket or sales slip which had printed thereon the words italicized below and, when finally filled in by the man, read as follows:

> "*ORDER NO.* 2304       *DATE* 9-14 1955
> "M Andrews Drilling Co.
> "P. O. Box 51, Carmi, Ill.
> "*SHIP TO* Walden Tool and Supply Co.
> "*AT* Wichita Falls, Texas
> "*HOW SHIP*
> "*TERMS* Cash *WHEN* _____
> "*SALESMAN* _____ *BUYER*    P McD
> "1 set B. J. Type B. Tongs        $950.00
> "1 set type C tongs exchange        450.00
>                    Paid        $500.00
> "By Paul McDonald"

He testified further that when the officers came to his home he told them he had traded for the tongs, gave them the name of the man from whom he had received them, and said that he had a bill of sale. He stated that he and his wife had endeavored to find the bill of sale but were unable to do so, but that his wife had found it while he was in jail and that he carried it to his

lawyer as soon as he was released. It was introduced in evidence and is shown above.

He introduced evidence that he had endeavored to locate Mr. McDonald, who so far as he could find no one in Wichita Falls knew or ever heard of, but had learned that the Andrews Drilling Company of Carmi, Illinois, which company he had never heard of before he obtained the slip, had been sold and heard that McDonald had moved to St. Louis. He further introduced evidence that he had welded and painted a pair of tongs similar to those described by Batson at Brewer Oil Field Supply Company, in Wichita Falls, and that the value of these tongs was between $500 and $1250.

He admitted that he had never seen McDonald prior nor subsequent to the day of the trade or knew who had introduced McDonald to him, that he did not remember what color the tongs were painted when he traded for them, and that he did not remember if McDonald's pickup truck had the name of Andrews Drilling Company or any other name painted on its side and admitted that he came into possession of the tongs on the day after they were alleged to have been stolen, and, further, that he had plead guilty to the offense of burglary in 1954 and was under a probated sentence at the time of the trial.

The question for our determination is whether the explanation that he "had a bill of sale for them," as shown by the State's evidence, was a reasonable and satisfactory account of his possession made at the first time his possession was challenged so as to overcome the legal presumption that arose from his possession of recently stolen property as a matter of law.

In should be borne in mind at the outset that it is the explanation made at the time an accused is found in possession of the property which controls and not the explanation made at the time of the trial. Banks v. State, 160 Texas Cr. Rep. 418, 271 S.W. 2d 661. It should be further remembered that we are bound to review the matter in the light most favorable to the state.

We shall discuss the facts in the case at bar more fully as we distinguish it from the facts in Daniel v. State, 60 Texas Cr. Rep. 515, 132 S.W. 773, and Knott v. State, 219 S.W. 825, upon which appellant relies.

In the Daniel case, there were no mutilation or disfiguring

marks or brands on the animal in question nor was it secreted in any way. Daniel's books showed the purchase of the animal, and he turned over to the justice of the peace at the examining trial the receipt or bill of sale which he claimed to have received with the animal. At the time he was first found in possession of the animal, he told the owner that he had bought the same from a man named Feld.

In the Knott case, the accused, when found in possession of the stolen automobile, told the officer that he stored the automobile and then called his home and the police station in an effort to locate the officer so that he might share in the reward for the stolen automobile, pursuant to a prior conversation between the appellant and the officer.

In the case at bar, the appellant admittedly changed the color of the tongs and had them locked in his garage. He further admitted that he had never shown the receipt to any one in a position of authority prior to the trial.

We have concluded that the old case of Roberts v. State, 17 Texas App. 82, is here more applicable. In that case, Presiding Judge White held that it was within the province of the jury to conclude that the bill of sale was but a sham and a device.

The explanation given at the trial does not control, but even if it did *it* does not comport with human experience and was rejected by the jury. Normally, a man would not enter into a trade involving property of the value shown in this case without knowing the man with whom he was dealing or at least make some inquiry about him. The appellant admittedly had no way of knowing whether McDonald, as he called him, had legitimately come by the tongs in question. Even if we applied the "reasonable and probably true" rule to appellant's explanation made at the trial, the testimony in this record would not support it, but points to its falsity.

Having concluded that the evidence is sufficient to support the conviction and no reversible error appearing, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

The facts are not sufficient to support this conviction. I state only such of the facts as are necessary to show the proposition of law involved:

The owner of the stolen pipe tongs discovered that they were missing on September 13, 1955, from leased premises in Grayson County. He gave no testimony that would indicate how long the tongs had been missing at that time. There is an absence of any testimony as to when they were last seen in the possession of the owner or on the leased property. Approximately two months after it was discovered that the tongs were missing and after appellant had given the officers his consent to search the closet and premises, the tongs were found in his possession at his home in Wichita County, locked in a closet attached to an open garage or carport.

At the time the tongs were found in his possession, appellant gave an explanation of his possession thereof by telling the officers that he had a bill of sale for the tongs.

This explanation by the appellant that he had a bill of sale therefor was neither denied nor disputed by the state.

The defensive theory, as shown by the testimony of the appellant and others, was that he came into the possession of the tongs by a valid purchase, as evidence of which he offered the bill of sale.

The defense of alibi was also imposed.

In its final analysis, then, appellant's guilt is made to depend upon his possession of the tongs some two months after they had been stolen—as to which the appellant, when his possession was first challenged, gave an explanation entirely in keeping with his innocence. Such explanation was not challenged by any testimony to the contrary.

Certain legal propositions enter into a determination of the sufficiency of the evidence to support the conviction:

One is that possession of stolen property is a circumstance of the guilt of the possessor thereof. To warrant an inference or presumption of guilt from the circumstance of possession, alone, of the stolen property, such possession must be recent, must be personal and exclusive, must be unexplained, and must involve a distinct and conscious assertion of property by the defendant. The authorities attesting the rule will be found under Note 37 of Art. 1410, Vernon's P.C., and in Branch's P.C., 2d Edition, Vol. 5, p. 96.

Another legal proposition is that when the state relies for a conviction upon proof of the possession of recently stolen property to make out a case of guilt and when the accused, at the time his possession was first challenged, made a reasonable explanation of his possession, the state must further show that such explanation was false. Note 38, Art. 1410, Vernon's P.C.; Art. 1410, Branch's P.C., 2d Edition, Vol. 5, p. 100.

Here, the state made no effort to show that appellant's explanation of his possession was false. It is true that the trial court submitted to the jury the issue of a purchase by appellant of the property as a defense and this was rejected, but the fact remains, nevertheless, that appellant's explanation that he had a bill of sale for the property cast upon the state the burden of offering some evidence to show the falsity of that explanation.

It must be remembered that recent possession of stolen property may be accounted for by proof of its purchase, whether the purchase be in good faith or bad faith. And if the defendant purchased the property, in fact, he cannot be convicted of the theft of it although he knew at the time he purchased it that it had been stolen by the seller. The receiver or concealer of stolen property cannot be guilty, also, of the theft of the property.

There is as much evidence, here, that appellant received the property from the thief, knowing it was stolen, as there is that he stole it.

Under such facts, the outstanding hypothesis that appellant was the receiver or concealer of the stolen property must be disproved in order to sustain a conviction for the theft thereof.

For the reason stated, the judgment should be reversed and the cause remanded.

I hereby enter my dissent.