Sidney Village **HAWKINS**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–96–00050–CR.

Court of Appeals of Texas,
Tyler.

Oct. 22, 1997.

Discretionary Review Refused
Feb. 11, 1998.

Rehearing Overruled March 11, 1998.

Forrest K. Phifer, Rusk, for appellant.

Elmer C. Beckworth, Rusk, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

RAMEY, Chief Justice.

Sidney Village Hawkins ("Appellant") was indicted on two counts of aggravated assault on a peace officer and convicted on both counts by a jury. The jury assessed his punishment at imprisonment for a period of 25 years on each count. Appellant raises two points of error; we will affirm the judgment of the trial court.

In both of Appellant's assignments of error, he contends that the trial court erred in denying his motion to suppress evidence, namely the twenty-gauge shotgun that the jury found he pointed at two police officers. In his first point, he asserts that the trial court's failure to suppress the shotgun violated the Fourth Amendment to the United States Constitution, which prohibits unreasonable searches and seizures, and his second point of error alleges a violation of Article 1, section 9 of the Texas Constitution. Both parties argue that the two points of error may be analyzed as one, and we will consider them together.

At a hearing on a motion to suppress, "the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony." *DuBose v. State*, 915 S.W.2d 493, 496 (Tex.Cr.App.1996) (citing *Taylor v. State*, 604 S.W.2d 175, 177 (Tex. Cr.App. [Panel Op.] 1980)). The trial court is also the initial arbiter regarding the legal significance of the facts presented. *Id.* The trial court's decisions concerning these matters will not be disturbed absent a clear abuse of discretion. *Id.; Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Cr.App.1993). Because the trial judge is the sole trier of fact at a suppression hearing, we are not at liberty to disturb any finding supported by the record. *Brimage v. State*, 918 S.W.2d 466, 504 (Tex.Cr.App.1994). In other words, this Court may not intercede even if the evidence would have led us to a different ruling, "as long as the trial court's rulings are at least within the 'zone of reasonable disagreement.'" *DuBose*, 915 S.W.2d at 496–497.

At the suppression hearing in the instant case, the trial court received the testimony of three police officers and the woman with whom Appellant had shared an apartment for three or four months. Appellant's girlfriend, Melissa Minchew ("Minchew"), called police complaining that Appellant had threatened her and her baby with a shotgun. Appellant still had the baby in the couple's apartment and would not let Minchew retrieve the baby. The police officers claimed that Minchew was extremely upset and begged them to go with her to get her child and help her move out of the apartment. At about 8:30 p.m., they arrived at the apartment, and Minchew entered it. The officers could hear her arguing with Appellant. The officers then entered the apartment and observed Minchew and Appellant physically fighting over the child. According to the officers, when Appellant saw them, he pointed a sawed-off shotgun at them, and they quickly exited. Another officer arrived and talked Appellant into releasing Minchew and the baby, after which all of the officers and Minchew with the baby left the scene and returned to the police station.

The officers further testified that when they then took Minchew and her baby to the police station, they left Appellant unsupervised until about 10:00 p.m., when they dispatched another officer to keep the apartment under surveillance. While at the station, Minchew told them that Appellant had a warrant out for his arrest based on a probation violation. The officers testified that Minchew declared that she wanted

them to arrest Appellant, and while Minchew admitted such a statement, she denied giving the officers permission to reenter the apartment.

At approximately 10:30 p.m., some two hours after leaving the apartment with Minchew and the baby, the officers returned with reinforcements and negotiated with Appellant to surrender. During the negotiations, some of the officers were able to see through an apartment window and observed Appellant holding the illegal shotgun. The police captain, Marvin Acker, testified that when he talked Appellant into surrendering, Appellant offered to bring the shotgun outside the apartment but that he instructed Appellant to leave the shotgun in the apartment for the sake of safety. Once Appellant was in custody, the officers retrieved the shotgun from the apartment where Appellant had lain it on a bed.

At the hearing on the motion to suppress, Minchew contradicted the officers' version of events on most points and testified that the officers never requested her permission to enter the apartment and that she never gave them consent to enter it. She claimed that she and Appellant neither argued nor raised their voices while the officers waited outside the apartment. She also disputed the officers' claim that Appellant pointed the gun at them or threatened them.

Appellant argues that the trial court abused its discretion in refusing to suppress the evidence of the illegal shotgun because no exception to the constitutional ban on warrantless searches and seizures pertains in this case. The State argues that the entry of the apartment to retrieve the gun was valid because the officers had consent to enter in the first place, observed Appellant holding the shotgun during negotiations, and possessed an arrest warrant from the probation violation. That warrant, however, did not expressly authorize a search and seizure.

■ Whenever police enter a residential unit without consent of the residents, that entry constitutes a search. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex.Cr.App.1991) (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "In order for a warrantless search to be justified, the State must show the existence of probable cause at the time the search was made, and the existence of exigent circumstances which made the procuring of a warrant impracticable." *Id.; Delgado v. State*, 718 S.W.2d 718 (Tex.Cr.App.1986). The United States Supreme Court has established that even in the presence of probable cause, a warrantless search of a dwelling will withstand constitutional scrutiny "only in 'a few specifically established and well-delineated' situations." *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970) (quoting *Katz*, 389 U.S. at 357, 88 S.Ct. at 514). Those exceptions include situations in which police have consent, are responding to an emergency or are in hot pursuit of a fleeing felon, and when contraband is in the process of being destroyed or about to be removed from the jurisdiction. *Vale*, 399 U.S. at 34–35, 90 S.Ct. at 1972. The State bears the burden of establishing the existence of these exceptions. *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex.Cr.App.1979). Probable cause is not an issue here. The three police officers testified that Appellant had been observed in possession of the illegal shotgun, and that the gun was used in the commission of the offenses. Furthermore, in light of the testimony of the three police officers, there can be little doubt that the trial court was within his discretion when he determined that the police officers had the consent of Minchew to enter the apartment the first time, at about 8:30 p.m. Where Appellant raises the most likely possibility of an unconstitutional search is with regard to the second entry, two hours later, when police entered the apartment without a search warrant, and without a request being made by Minchew to retrieve the gun. Appellant asserts that there were no "exigent circumstances" justifying a warrantless search because the State had two hours in which to procure a warrant while Appellant was still in the apartment and because the gun was inside the apartment when Appellant was finally arrested outside the apartment.

■ The State contends that the consent given by Minchew for the first entry into the apartment extended to the second. In a case factually similar to the instant case, the Tex-

as Court of Criminal Appeals held that the consent originally given to police officers carried over from their first entry into a residence to their second entry. *Morrison v. State*, 508 S.W.2d 827, 829 (Tex.Cr.App.1974). There, a police officer entered the defendant's apartment with the consent of a third party to whom the defendant had given temporary permission to use the apartment. The third party accompanied the police officer during the first entry, and returned with the police officer four hours later after the officer had obtained a search warrant which the State later conceded was invalid. The court of criminal appeals held that the consent originally given by the third party carried over during the intervening four hours and remained valid for the later entry, especially in light of the fact that the third party accompanied the officer to the scene for the second entry. *Id.* In another case, a third party's consent to search a house on one day carried with it the implicit consent to search again nine days later. *Smith v. State*, 530 S.W.2d 827, 833 (Tex.Cr.App.1975).[1]

Though Minchew did not accompany the officers on their return to the apartment to arrest Appellant, she testified that she did press charges against him, called for his arrest, and informed the police that there was a warrant out for his arrest for probation violations. She remained at the police station at the request of the officers while they returned to the apartment to negotiate Appellant's surrender and arrest, and she listened as one of the officers who remained with her at the station negotiated with Appellant over the phone. While Minchew denied giving consent to the officers to enter her apartment in the first place, the undisputed evidence establishes that she encouraged the return to the scene and the arrest. According to the testimony of the police officers, she did nothing to revoke her consent to enter the apartment. We therefore agree with the State and hold that the consent given by Minchew carried over to the second entry into the apartment. The trial court's

finding in this regard has support in the record and did not constitute an abuse of discretion.

■ Furthermore, the State asserts that Appellant voluntarily relinquished, or abandoned, the gun when he surrendered, thereby rendering its seizure valid. *See Brimage v. State*, 918 S.W.2d 466, 507 (Tex.Cr.App. 1996); *Rosalez v. State*, 875 S.W.2d 705 (Tex. App.—Dallas 1993, pet. ref'd). The Texas Court of Criminal Appeals has explained that voluntary abandonment of property allows police to take possession of it without violating the Constitution:

> When police take possession of property abandoned independent of police misconduct there is no seizure under the Fourth Amendment. *Hawkins v. State*, 758 S.W.2d 255, 257 (Tex.Cr.App.1988); *Clapp v. State*, 639 S.W.2d 949, 953 (Tex.Cr.App. 1982). This Court has spoken approvingly of language in *U.S. v. Colbert*, 474 F.2d 174 (5th Cir.1973) (en banc), which discussed how abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances, with the issue not being in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *Sullivan v. State*, 564 S.W.2d 698 (Tex.Cr.App.1978) (op. on reh'g); *Smith v. State*, 530 S.W.2d 827, 833 (Tex.Cr.App.1975).

*McDuff v. State*, 939 S.W.2d 607, 616 (Tex. Cr.App.1997). The evidence here reveals that when Appellant was speaking with the officer negotiating his surrender, he offered to bring the gun outside the apartment and hand it to the police when he surrendered. The officer told him to leave the gun in the apartment for the sake of everyone's safety. No doubt the safety of Appellant himself would have been at risk had the officer told

1. In support of this proposition, the *Smith* court cited *Brown v. State*, 475 S.W.2d 938 (Tex.Cr. App.1972), *overruled on other grounds, Bradford v. State*, 608 S.W.2d 918, 921 (Tex.Cr.App.1980), where the "Court held that officers had a right to enter a house after the first entry for further investigation," and *Corbett v. State*, 493 S.W.2d 940 (Tex.Cr.App.1973), *cert. denied*, 414 U.S. 1131, 94 S.Ct. 871, 38 L.Ed.2d 756 (1974). *Smith*, 530 S.W.2d at 833.

him to bring the weapon with him. Because Appellant offered to relinquish the gun and left it in the apartment only because of the officer's instructions, it may be inferred from the "words spoken, acts done, and other objective facts and relevant circumstances" that he voluntarily discarded it and no longer retained "a reasonable expectation of privacy" with regard to the shotgun or the apartment in which he left the gun at the time of the search. *Id.* We hold that there is evidence to support a finding of abandonment of the shotgun.

■ "[T]he law requires that a suppression ruling be sustained if it can be upheld on any valid theory regardless whether the State argued it at trial or on appeal." *Travis v. State,* 921 S.W.2d 559, 575 (Tex.App.Beaumont 1996, no pet.) (citing *Lewis v. State,* 664 S.W.2d 345, 347 (Tex.Cr.App.1984)). For the foregoing reasons, we hold that the trial court did not abuse its discretion in denying Appellant's motion to suppress the shotgun. Therefore, we overrule Appellant's first and second points of error and affirm the judgment of the trial court.